Sutlirr, J.
It is provided by the second section of the “ act authorizing and regulating arbitrations,” passed February 17, 1831, Chase’s Stat. 1797,1798 :
“ That the parties to such submission may enter into arbitration bonds; which bonds shall be conditioned for the faithful performance of the award or umpirage, setting forth the name or names of the arbitrators or umpire, and the matter or matters submitted to his or their determination; and, when such is the agreement, that such submission be made a rule of any court of record within this state, or a rule of any particular court of record named in the submission.”
It also further provides as follows :
“ Seo. 8. That if either of the parties shall refuse or neglect to comply with said award or umpirage, the other party may file the same, together with the submission or ^arbitration bond, in the court named in the submission; or, if no particular court be named therein, then in the court of common pleas in the county whore said arbitration was held.
“ Seo. 9. That such court, at the next term thereof after filing the same as aforesaid, if no legal exceptions be made or taken.to said award or other proceedings, and said award is for the payment of money, shall enter up judgment thereon, as on a verdict of a *297 jury between the parties; and issue execution thereon as in other cases, immediately after the amount specified in said award is due and payable.”
Under the foregoing provisions of the statute the submission bond and award were duly entered in the court of common pleas, and the parties were, by force of the provisions contained in section 8, constructively present in court, in like manner as upon the return of a summons, ortho entering of an appeal during the term. But it is evident that the provisions contained in section 9 no more warranted a judgment to be entered at the same term than in the eases supposed of a return of a summons, or on an entry of appeal, without allowing the time limited in such cases, to set forth the defense or objections to the plaintiff’s demand.
What, then, was the force and effect of the judgment so entered by the court of common pleas at its March term?
The parties being constructively in court, and the court having jurisdiction, both of the subject-matter and the parties, the judgment, however irregular, could not be regarded as-coram nonjudice. So long, therefore, as that judgment remained neither set aside, reversed, nor enjoined, it was entitled to respect as a legal judgment between the parties. And such we apprehend to be the character of the judgment, as shown by -the answer. For, although the averment in the answer of the administrator of West is, *that “ at the time the said West had notice of the action by ■service of the summons, the plaintiff had no valid judgment against the defendants. Joseph Williams and Robert Williams, such as is stated in said petition.” No other defect is suggested, either by the answer or in argument, than the one mentioned. And it is ■certain that a denial of the judgment being in all respects correctly described, as its not being for precisely the same amount, in debt, damage, or cost, would not be a valid defense on the part of a garnishee. Such a variance, and not shown to be any substantial variance, could not be regarded as any bar to the action against ■such respondent. The answer is not- a denial of the substantial facts stated in the petition—of the plaintiff having recovered -a judgment against the Williamses, and their insolvency, and their having effects in the hands of the intestate at the time of commencing the suit, or of either of those facts. Such a special answer, therefore, under our former practice, would only have amounted, in its nature, to a plea in bar; it would bo a con *298 fession of the right to sue, but for the special matter alleged and relied upon for the avoidance of the right. But it was always a rule in our chancery practice, that a plea in bar of matters, whether of record in the court itself, or some other court, must bo of such facts dehors the bill as, if true, would conclude the plaintiff’s right of recovery, appearing from the bill itself. The matters of variance, as stated, or to be implied, would therefore evidently have been held insufficient, in an answer or plea in a chancery proceeding, to constitute a bar to the relief sought.
And, by the provisions of the code, the answer is required to contain either a general or special denial of each material allegation of the petition, or a statement of new matter, constituting a defense, counter-claim, or set-off. But the averment that the plaintiff, at the time of the service of the summons on the intestate, had no valid judgment against the "Williamses, “such as is stated in the petition,” is neither such a general nor special denial of the *material allegations, or of any of the material allegations of the petition, as would, if true, preclude a right of recovery; nor is it such a statement of new matter as would, if true, constitute a defense. It is only, as remarked, an averment that the judgment, actually obtained is not, in all respects, correctly described in the petition.
Is the other averment, that at the time of obtaining the judgment in June, and of filing the supplemental petition, West did not-owe the Williamses, an averment which, if true, would constitute a-defense ?
This averment, like the former, is neither a general nor specific denial of any material allegation of the petition, if the supplemental petition is to be regarded as a supplemental instead of an original petition. Nor is it, in such a case, the statement of new matter constituting a defense. By the rule that every pleading is to be taken most strongly against the pleader, even when liberally construed, this averment can only be understood to amount to an allegation that the intestate of respondent had. after the commencement of the action, and before the filing of the supplemental petition, paid the Williamses, or obtained from them a discharge from his indebtedness.
The answer of Gibbon contained no express objection to the continuance of the original action predicated upon the former judgmeet, after its reversal, by means of the amended or supplemental *299 petition; but the plaintiff, by a demurrer to the answer of the defendant, necessarily calls in question the sufficiency of his own pleadings. The question is therefore faix-ly raised by the demurrer, whether the reversal of the judgment of the March term at the June term, was necessarily a termination of the action against. West for the satisfaction of such judgment so reversed.
The chancery practice act of March 14, 1831, by its terms, provided only for filing a creditor’s bill to subject the equities or credits of the debtor, where a judgment had been obtained against the debtor, and he had not personal *or real estate sufficient to satisfy such judgment. Chase’s Stat. 1697, sec. 15. The same provision is expressed, in substantially the same language, in section 458 of the code, under which the petition and the supplemental petition in this case were filed.
. The provision, as expressed in the chancery act, came before the Supreme Court of this state for construction, in the case of Lessee of Stoddard v. Myers (8 Ohio, 203), at the December tei'm, 1837. In that case, a petition having properly been filed to chax’ge equitable interests in lands for the satisfaction of the judgment on the 8th of September, 1831, and afterward, in June, 1832, pending the suit in chancery, the judgment having been reversed and the case redocketed, and a judgment again obtained in March, 1833, and the lands having been conveyed in September, 1832, and a supplemental bill filed in June, 1833, aixd continued until in 1835, when a final decree was entered, charging the equitable interest; the Supreme Court held the decree proper, and that the conveyance of September, 1832, was made pendente lite. From that time to the present, that construction of the statute has been acquiesced in, and has remained an established rule of practice. We think the construction thus early given to this px’ovision, as-expressed in the act of 1831, supported by principles of law as-well as sound .reason. The subject-matter of the suit and the parties in the action, as well as the object of the suit, all continued to bo before the court. The substantial object was the payment of-the debt of the judgment debtor; and the reversal of that judgment for an iivegularity, was in no sense an intimation of its payment, or a relinquishment of the claim of the plaintiff to enforce its payment, in the manner and by means expressed in the petition. The law, which never requires a vain thing, would xxot, therefore, require a plaintiff, after having the irregularity in the judgment cured by a. *300 new judgment expressing the same debt, incur the delay and expense of dismissing the suit and commencing de novo, when the entire proceeding *could be perfected by a supplemental petition. And our practice, as regulated by the code, shows still less favor to objections merely technical. A supplemental petition was always regarded as only ancillary to the original petition. Its office is to bring before the court some event which has happened subsequently to the commencement of the suit. The plaintiff does not thereby withdraw any allegation in his original petition not inconsistent with the averments in the supplemental petition. If, therefore, the plaintiff had even neglected to make, as he has •done in this case, special reference in his supplemental petition to his original petition, he would still have been entitled to the full benefit of the same.
We perceive no error in the record of the judgment of the district court, and the judgment of that court is affirmed, with costs.
Brinkerhoee, C. J., and Scott, Peck, and Gholson, JJ., con■curred.